GEORGE Z. WORK *et al.* v. T. J. COVERDALE *et al.*

FRAUDULENT SALE—*Rights of Bona Fide Purchaser.* Where an insolv-
ent merchant sells his stock of merchandise to defraud his creditors,
his vendee, without notice of the fraud at the time of the sale, is pro-
tected only to the extent of payments made or security or property
appropriated in payment thereof before he obtains knowledge of the
fraud of his vendor.

*Error from Pottawatomie District Court.*

THE opinion states the case.

*W. F. Challis,* for plaintiffs in error.

*Keller & Noble,* for defendants in error Ellis & Osborn.

Opinion by STRANG, C.: On the 11th day of September,
1886, the defendant T. J. Coverdale was a merchant doing
business at Havensville, in Pottawatomie county. He had in
his possession and was the owner of a large stock of goods.
He was indebted to the plaintiffs in the sum of about $240.
On that day he agreed to sell his stock of goods to the other de-
fendants, Ellis & Osborn, which sale was fully consummated on
the 13th day of said month, by delivering said stock of goods
to said Ellis & Osborn, receiving from them cash and their
separate notes for the purchase-price of the goods. Among
the notes given Coverdale for the goods was the note of Ellis
for $1,550, payable 10 months from date. This action was
brought May 24, 1887, to set aside the sale of the stock of
goods by Coverdale to Ellis & Osborn and subject said goods
to the payment of the debt of the plaintiffs. A jury was
waived, and the case was tried by the court, which, among
others, made the following finding of fact:

"That about the 1st day of July, 1887, Ellis paid the note
of $1,550 which he had given when these goods were pur-
chased, and which was due 10 months after date, to Ralph
Coverdale, son of T. J. Coverdale, who presented the note to
him for payment. He paid it by turning over to Ralph Cov-

erdale two notes which he held, one against Ralph Coverdale and one against his brother, amounting to $600, and paying said Ralph Coverdale $900 in cash. The money thus collected by Ralph Coverdale was paid by him to his father, of which transaction Ellis had no knowledge."

Plaintiffs claim that, as Ellis & Osborn knew of the indebtedness of T. J. Coverdale to them before this payment of $1,550 was made by Ellis to Ralph Coverdale, such payment was made in fraud of their rights, to the extent of their claim, and that the second conclusion of law of the trial court is wrong as applied to the ultimate facts found by the court, as they appear from the finding above quoted. We think this contention of the plaintiffs is correct. It is the settled law of this state, that where a merchant sells· his stock of goods in fraud of his creditors, the purchaser thereof is protected only to the extent of payments made or securities or property appropriated in payment thereof before he obtains knowledge of the fraud of his vendor. (*Bush v. Collins*, 35 Kas. 535.) But the defendants claim that the $1,550 note paid by Ellis after the defendants became aware of the character of the sale from Coverdale to them, and after they had learned of his indebtedness to the plaintiffs, was a negotiable note and indorsed by Coverdale to his son, and that therefore the security was in the hands of an innocent purchaser, and under the law was already appropriated to the payment of the debt; and hence the payment of the note to the holder was not in fraud of the right of the plaintiffs. If T. J. Coverdale had in good faith transferred the note by indorsement to his son Ralph, this contention of the defendants would be true. But we do not think the finding of the court shows that the note had been indorsed to Ralph at all. The court finds that the note was presented by Ralph Coverdale for payment, but it also finds that the money paid to him on said note was by him turned over to his father. If the note was the property of Ralph, why did he pay the money therefor to his father? We think that a correct construction of this finding shows that the note was still the property of T. J. Coverdale. If we should con-

strue this finding otherwise, we would then be compelled to say that such finding was not only not supported by the evidence, but was contrary to the only evidence in the case upon the question of ownership of the note, since the only evidence on that point is the statement of Ralph Coverdale, who says his father left the note with him for collection. In that event we would be compelled to reverse the case upon the ground that the controlling finding of fact in the case is not supported by any evidence. (*Mo. Pac. Rly. Co. v. Cassity,* 44 Kas. 207.) We think, however, that the finding of fact, while it is not as full as it should have been upon this point, is consistent with the construction which leaves the ownership of the note at the time of its payment in T. J. Coverdale. It therefore follows that the payment of the same was in fraud of the rights of the plaintiffs to the extent of their claim, and that the second conclusion of law reached by the trial court is erroneous.

We recommend that the judgment of the district court be reversed, and judgment be entered for the plaintiffs for the sum of $269.29.

By the Court: It is so ordered.

All the Justices concurring.